**EOD**

04/23/2024

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **VALDINEIA F. DESOUZA** | § | Case No. 22-40141 |
| | § | |
| Debtors | § | Chapter 7 |
| | § | |

| | | |
|---|---|---|
| AUCTION CREDIT | § | |
| ENTERPRISES, LLC | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 22-04026 |
| | § | |
| VALDINEIA F. DESOUZA | § | |
| | § | |
| Defendant | § | |

## <u>MEMORANDUM OF DECISION</u>

On this date the Court considered "Motion for Summary Judgment"[1]

and "Brief in Support of Motion for Summary Judgment"[2] (together the

"Motion") filed by Auction Credit Enterprises, LLC (the "Plaintiff") on June 6,

2023, and the respective objections, replies, and other related filings.[3]

Plaintiff seeks to except from discharge an alleged debt of Valdineia F.

---

[1] ECF No. 31.

[2] ECF No. 32.

[3] ECF Nos. 33, 34, and 35.

1

Desouza (the "Defendant") pursuant to 11 U.S.C. § 523(a)(2)(A), and § 523(a)(4).[4]  After consideration of the pleadings, proper summary judgment evidence, and the relevant legal authorities, the Court concludes that genuine issues of material fact remain.  For the reasons explained in this memorandum, Plaintiff's Motion is **DENIED**.

## I.  Jurisdiction

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157.  The Court has the authority to enter a final judgment in this adversary proceeding because it constitutes a statutorily core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (I), and meets all constitutional standards for the proper exercise of full judicial power by this Court.

## II.  Facts and Procedure[5]

Defendant owned a used car dealership which was operated under an assumed name, AutoDallas.com ("AutoDallas").[6]  On December 22, 2020, Plaintiff and Defendant entered into a "Demand Promissory Note and

---

[4] Plaintiff also pleaded a cause of action under 11 U.S.C. § 523(a)(6) against Defendant, but does not seek summary judgment on this cause of action in the Motion.

[5] These facts are presented only as a general background to the legal claims addressed by the Motion.  This section is not intended to resolve any disputed or contested facts by and among the parties.

[6] Pl. Mot. Sum. J., ECF No. 32 at 6.

Security Agreement" (the "Note").[7]   Under the Note, Defendant obtained

credit from Plaintiff for use purchasing inventory for AutoDallas.[8]   This type

of loan is typically known as a floor plan loan.   The Note obligated Defendant

to "pay" all proceeds from sales of financed inventory to Plaintiff.[9]   In addition

to inventory, the Note granted Plaintiff a security interest in some of

AutoDallas.com's other property.[10]   This security interest was perfected by

notation on vehicle titles and the filing of a UCC financing statement.[11]   The

parties also entered into an Unlimited and Continuing Guaranty (the

"Guaranty") in which Defendant guaranteed repayment in full of any money

loaned under the Note.[12]

---

[7] *Id.*

[8] *Id.*

[9] *Id.* at 7.  Specifically, the Note provided as follows: "Dealer shall pay all Obligations to Lender at the offices of Lender, on demand and without notice, with respect to Lender-Financed Inventory on the earlier of: (a) twenty-four (24) hours from the time Dealer receives payment by or on behalf of purchaser of an item of Lender-Financed Inventory; (b) forty-eight (48) hours after the disposition by sale or otherwise of an item of Lender-Financed Inventory; (c) the Maturity Date; or (d) upon demand by Lender.*"*

[10] *Id.* The collateral securing the Note included "all Accounts, Deposit Accounts, General Intangibles, Documents, Instruments, Investment Property, Chattel Paper (including without limitation letters of credit, documents of title, books and records), Inventory (as defined in the Note), whether now existing or acquired and wherever located, Purchase Money Inventory, and all additions, accessions, accessories, replacements, and Proceeds, together with any and all books and records."

[11] *Id.* at Exhibit A ¶ 8.

[12] *Id.* at 6.

According to Plaintiff's Motion, between June 25, 2021 and September 10, 2021, Plaintiff loaned money to Defendant pursuant to the Note to finance the purchase and resale of thirteen different vehicles.[13]  The thirteen vehicles are as follows:[14]

| Stock # | VIN | Year | Make | Model |
| --- | --- | --- | --- | --- |
| 10607.72 | 3N1AB7AP2DL665433 | 2013 | Nissan | Sentra |
| 10607.74 | JTJYARBZ0K2143891 | 2019 | Lexus | NX 200t |
| 10607.75 | 2T2BZMCA6KC188411 | 2019 | Lexus | RX350 |
| 10607.76 | 2C3CA5CG9BH522676 | 2011 | Chrysler | 300 |
| 10607.77 | 1FTFX1CF7CFA24342 | 2012 | Ford | F-150 |
| 10607.78 | KNADH4A35B6918222 | 2011 | Kia | Rio |
| 10607.79 | 3N1AB7AP6GY248565 | 2016 | Nissan | Sentra |
| 10607.81 | 3N1CE2CPXEL386121 | 2014 | Nissan | Versa Note |
| 10607.83 | KL8CB6S99EC541603 | 2014 | Chevrolet | Spark |
| 10607.84 | 5NPEB4ACXEH933964 | 2014 | Hyundai | Sonata |
| 10607.86 | 3N1CN7APXCL921509 | 2012 | Nissan | Versa |
| 10607.87 | 3N1AB7AP5FY322296 | 2015 | Nissan | Sentra |
| 10607.88 | 3N1AB7AP9DL636463 | 2013 | Nissan | Sentra. |

---

[13] *Id.* at 8.

[14] *Id.* at 8-9.

After AutoDallas sold these vehicles, Plaintiff contends Defendant failed to remit sales proceeds as required by the Note.[15]

Plaintiff declared a default under the Note terms on September 29, 2021, and has never been paid proceeds for these vehicles.[16] Plaintiff asserts Defendant, Defendant's agents, or Defendant's partners either: (1) sold these thirteen vehicles to third parties without remitting the proceeds to Plaintiff, (2) gave away these thirteen vehicles in illegitimate transactions without receiving any sales proceeds, or (3) absconded with the vehicles.[17] Plaintiff specifically alleges that certain vehicles were sold without proceeds remitted as required.[18] Plaintiff also alleges Debtor converted a 2014 Chrysler, and represented to Plaintiff that account funds were sufficient to obtain a release of lien on a 2019 Lexus when funds were insufficient, resulting in loss to Plaintiff of the floored value of the Lexus.

Defendant filed her bankruptcy petition January 31, 2022.[19] Plaintiff filed this adversary against Defendant on April 26, 2022.[20] Defendant timely

---

[15] *Id.* at 9.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 10.

[19] Bankr. Pet., ECF No. 1, Case No. 20-40141.

[20] Compl., ECF No. 1.

answered on May 31, 2022.[21]  After discovery, Plaintiff filed the summary

judgment Motion on June 6, 2023.[22]  Defendant filed a timely objection. [23]

## III.  Summary Judgment Standard

A court may grant summary judgment "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."

*Celotex Corp. v. Catlett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P.

56(c)).  Thus, if summary judgment is appropriate, the Court may resolve the

case as a matter of law.

The moving party always bears the initial responsibility of informing the

court of the basis for its motion and producing evidence which it believes

demonstrates the absence of a genuine issue of material fact.  *Celotex*, 477 U.S.

at 323.  How the necessary summary judgment showing can be made depends

upon which party will bear the burden of proof at trial.  *See Little v. Liquid Air

Corp.*, 37 F.3d 1069, 1077 n.16 (5th Cir. 1994).  "A fact is material only if its

resolution would affect the outcome of the action."  *Wiley v. State Farm Fire and

Cas, Co.*, 585 F.3d 206, 210 (5th Cir. 2009).  "All reasonable inferences must be

---

[21] Def. Ans., ECF No. 9.

[22] Pl. Mot. Summ. J., ECF No. 31.

[23] Def. Resp., ECF No. 34.

6

viewed in the light most favorable" to the nonmoving party, and "any doubt must

resolved in favor of the nonmoving party." *In re Louisiana Crawfish Producers*,

852 F.3d 456, 462 (5th Cir. 2017) (citing *Matsushita Elec. Indus. Co., Ltd. V.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   An actual controversy of fact

exists where both parties have submitted evidence of contradictory facts.

*Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

Courts may accept the moving party's version of the facts as

undisputed.  *Alvarez v. United Parcel Serv. Co.*, 398 F. Supp. 2d 543, 548-49

(N.D. Tex. 2005) (overruled on other grounds); cf. *F.D.I.C. v. Foxwood Mgmt.*

*Co., No.* 92-2434, 1994 WL 24911, at *6 (5th Cir. Jan. 14, 1994) (citing cases

for the proposition that courts can accept the contents of a conclusory

affidavit as true if they are unchallenged).   This comports with the notion

that courts need not hunt through the record searching for a genuine issue of

material fact.  *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th

Cir. 1998);  *Savers Fed. Savs. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 (5th

Cir. 1989).   Once the movant has met its burden, the nonmovant may not rest

upon allegations in the pleadings and still survive summary judgment.  *Triple*

*Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007).   The Court does

not, "in the absence of any proof, assume that the nonmoving party could or

would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## V.  Discussion

Under the standards enumerated, the Court finds genuine issues of material fact exist warranting trial on the merits and denial of the Motion.

### A.    11 U.S.C. § 523(a)(2)(A): Actual Fraud, False Pretenses, or False Representations

11 U.S.C. § 523 (a)(2)(A) excepts from discharge debts obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).  Plaintiff's Motion appears to seek summary judgment under each of these components of § 523(a)(2)(A) against Defendant.

To obtain a judgment of nondischargeability for false representation or false pretenses, a creditor must demonstrate that a debtor made (1) knowing and fraudulent falsehoods; (2) describing past or current facts; (3) that were relied upon by the other party.  *Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 187 (Bankr. E.D. Tex. 2015) (citing *Allison v. Roberts (Matter of Allison)*, 960 F.2d 481, 483 (5th Cir. 1992)).  False pretenses and false representations "both involve intentional conduct intended to create or foster a false impression."  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 389

(Bankr. E.D. Tex. 2009).  A false representation, however, "involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement."  *Id.*  To succeed under § 523(a)(2)(A), the creditor must prove an intent to deceive.  *Friendly Fin. Service - Eastgate v. Dorsey (In re Dorsey)*, 505 F.3d 395, 399 (5th Cir. 2007).  A court may infer the requisite intent from a "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation."  *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005);  *see also In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994) (considering the totality of the circumstances to determine the debtor's intent).

The Fifth Circuit has stated that actual fraud under § 523(a)(2)(A) may be proven by showing: (1) the debtor made a representation; (2) the debtor knew that the representation was false at the time it was made; (3) the debtor made the representation with the intent and purpose to deceive the creditor; (4) the creditor relied on the representation; and (5) the creditor sustained a loss as the proximate result of its reliance on the representation.  *Selenberg v. Bates (Matter of Selenberg)*, 856 F.3d 393, 398 (5th Cir. 2017); *see also Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005). Despite these elements of actual fraud, the Supreme Court has ruled that

9

"[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like

fraudulent conveyance schemes, that can be effected without a false

representation." *Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. 356, 359

(2016).  Though it declined to adopt a definition of actual fraud for all times

and circumstances, the Supreme Court did state that "'[a]ctual fraud' has two

parts: actual and fraud." *Id.* at 360.  For fraud to be actual, plaintiffs must

make a showing of wrongful intent on the part of the defendant.  *Id.*

Specifically, the Supreme Court described this idea as follows:

> The word "actual" has a simple meaning in the context of common-law
> fraud: It denotes any fraud that "involv[es] moral turpitude or
> intentional wrong."  *Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586
> (1878).  "Actual" fraud stands in contrast to "implied" fraud or fraud "in
> law," which describe acts of deception that "may exist without the
> imputation of bad faith or immorality."  *Ibid.*  Thus, anything that
> counts as "fraud" and is done with wrongful intent is "actual fraud."

*Id.*  This intent can be inferred from circumstantial evidence.  *Caspers v. Van

Horne (In re Van Horne)*, 823 F.2d 1285, 1287–88 (8th Cir. 1987) (abrogated

on other grounds).  As with false pretenses or representations, reckless

indifference to the truth can in some situations constitute a sufficient

showing of wrongful intent to find actual fraud.  *In re Miller*, 39 F.3d 301, 305

(11th Cir. 1994); *see also Farmers & Merchants State Bank v. Perry (In re

Perry)*, 448 B.R. 219, 226 (Bankr. N.D. Ohio 2011) ("'[W]illful blindness' does

not provide a defense to an action brought under § 523(a)(2)(A) and may

instead be used as a factor indicative of fraud."); *see also Mid-South Maint., Inc. v. Burk (In re Burk)*, 583 B.R. 655, 667 (Bankr. N.D. Miss. 2018)("a debtor who recklessly disregards the truth has the requisite wrongful intent for his actions to constitute actual fraud.")

To satisfy the required element of creditor reliance, Plaintiff must prove both actual reliance and justifiable reliance which are determined by two different standards.  Actual reliance is the equivalent of causation-in-fact, which is defined as a "substantial factor in determining the course of conduct that results in . . . loss." *AT & T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001) (emphasis removed).  This level of reliance "requires little of the creditor." *Id.*  In the case of loan fraud, "an issuer usually will be able to establish actual reliance by showing it would not have approved the loan in the absence of debtor's promise." *Id.* at 411

Justifiable reliance, described as "an intermediate level of reliance," is a subjective standard that is more relaxed than the objective reasonable reliance standard. *Field v. Mans*, 516 U.S. 59, 74 (1995).  Despite this, reasonableness is still a consideration because "the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact." *Id.* at 76.  The promisee is not, however, required to investigate even if an investigation would reveal the falsity of the

11

promisor's representation unless the falsity is "readily apparent or obvious or there are 'red flags' indicating such reliance is unwarranted." *In re Hurst*, 337 B.R. 125, 133-34 (Bankr. N.D. Tex. 2005).

Finally, the creditor must establish that its loss sustained is the "proximate result" or legal cause of the debtor's representation. *State of Texas v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 967 (E.D. Tex. 1997). Proximate cause is "largely a question of foreseeability." *First Nat'l Bank of Omaha v. O'Brien (In re O'Brien)*, 555 B.R. 771, 782-783 (Bankr. D. Kan. 2016). Reliance on the debtor's representation is a proximate cause of the creditor's loss "if the evidence shows that the loss was a reasonably foreseeable consequence of the plaintiff's reliance." *Am. Tobacco Co.*, 14 F. Supp. 2d at 967.

There are circumstances however, as pointed out by Plaintiff, where "§ 523(a)(2)(A) can extend to liability for fraud that a debtor did not personally commit." *Kahkeshani v. Hann (In re Hann)*, No. 22-20407, 2023 U.S. App. LEXIS 27447, at *14 (5th Cir. 2023). In some cases a debtor may, under applicable state law, have vicarious liability for fraud warranting a finding of nondischargeability. *Bartenwerfer v. Buckley*, 598 U.S. 69, 143 S. Ct. 665, 670 (2023). In *Bartenwerfer*, Kate Bartenwerfer and her boyfriend David jointly purchased a house as business partners so that it could be remodeled and

12

sold.  David took charge of the project and signed checks, while Kate was

uninvolved.  Kieran Buckley purchased the house, and both David and Kate

attested they had disclosed all material facts about the property.  Later,

Bukley found undisclosed defects and brought suit, obtaining a joint

judgment against the Bartenwerfers which they were unable to pay.  After

the Bartenwerfers filed Chapter 7, Buckely filed a nondischargeability

adversary against them.  Ultimately, Buckley obtained a finding of

nondischargeability against David, but not Kate because she "lacked the

requisite knowledge of David's fraud . . ."  *Id*. at 671.   On appeal, the

Supreme Court ruled against Kate and found her judgment debt to Buckley

was nevertheless nondischargeable.  Using a textual approach, the Supreme

Court held that because it is "[w]ritten in the passive voice, § 523(a)(2)(A)

turns on how the money was obtained, not who committed fraud to obtain it."

*Id*. at 670.  Fraudulent intent must still be present to succeed under §

523(a)(2)(A) because "[t[he debt must result from someone's fraud, but

Congress was 'agnosti[c]' about who committed it."  *Id*. at 671.

A concurrence limits the reach of the holding in *Bartenwerfer* to cases

where a partnership or agency relationship exists between the debtor and the

fraudulent actor.  The concurrence stated that:

13

The Court here does not confront a situation involving fraud by a person bearing no agency or partnership relationship to the debtor. Instead, "[t]he relevant legal context" concerns fraud only by "agents" and "partners within the scope of the partnership."

*Id*. at 677. This Court therefore understands *Bartenwerfer* to require the Court to find some form of partnership or agency under state law in order to hold Defendant responsible for the nondischargeable fraud of another under § 523(a)(2)(A). The majority in *Bartenwerfer* confirms this understanding by reasoning that "the scope of one person's liability for another's fraud" is determined by state law. *Id*. at 675; *see also Kahkeshani v. Hann (In re Hann)*, No. 22-20407, 2023 U.S. App. LEXIS 27447, at *15 (5th Cir. 2023)(looking to Texas law).

This understanding of the holding in *Bartenwerfer* follows prior precedent from the Fifth Circuit by which this Court is bound. *See Deodati v. M.M. Winkler & Assocs. (In re M.M. Winkler & Assocs.)*, 239 F.3d 746, 751 (5th Cir. 2001); *see also Tower Credit, Inc. v. Gauthier (In re Gauthier)*, 349 F. App'x. 943, 945 (5th Cir. 2009); *see also Huddleston v. Whelan (In re Whelan)*, 582 B.R. 157, 172 (Bankr. E.D. Tex. 2018). In *Winkler* the Fifth Circuit, as this Court recognized in *Huddleston*, held that " if a debt arises from fraud and the debtor is liable for that debt under state partnership law, the debt is nondischargeable under § 523(a)(2)(A)." *Winkler*, 239 F.3d 746 at 751. This

14

is because "§ 523(a)(2)(A) prevents an innocent debtor from discharging liability for the fraud of his partners, regardless whether he receives a monetary benefit."[24]  *Id.*  A cause of action alleging actual fraud, false pretenses, or false representations under § 523(a)(2)(A) fails if no required partnership or agency under state law exists, or if evidence is insufficient of the actions of Debtor's agent or partner.[25]

The requirement that a partnership or agency relationship exist to establish vicarious liability under *Bartenwerfer* is applicable to the first three elements of actual fraud required for a finding of nondischargeability under § 523(a)(2)(A).  For Plaintiff to succeed on its actual fraud cause of action under § 523(a)(2)(A) utilizing the principles of *Bartenwerfer*, it must show that

---

[24] The Fifth Circuit has found similarly that "a fraudulent statement by a debtor's partner or agent may be imputed to the debtor under § 523(a)(2)(B)."  *Veritex Cmty. Bank v. Osborne (In re Osborne)*, 951 F.3d 691, 704 (5th Cir. 2020).

[25] It is worth noting that under Texas law, marriage alone is not sufficient to support a finding of agency or partnership as required under the holdings in *Bartenwerfer, Winkler,* and *Osborne*.  At least one court explained as follows:

> Applying the *Winkler* court's analysis here, the policy concerns at issue there are simply not implicated.  Davis and his wife are not partners under state partnership law who have contractually agreed to be agents for one another.  In fact, under Texas law one spouse is not the other's agent.  The act of one spouse does not make the other personally liable for his debts solely because of the marital  relationship.  *See, e.g., Nelson v. Citizens Bank & Trust Co.*, 881 S.W.2d 128 (Tex. App. Houston 1994).

*Bank of Am., N.A. v. Davis (In re Davis)*, Nos. 00-46377-BJH-11, 01-4024, 2002 Bankr. LEXIS 1953, at *55-56 (Bankr. N.D. Tex. 2002).  *See also* Tex. Fam. Code § 3.201(c)("A spouse does not act as an agent for the other spouse solely because of the marriage relationship.").

Debtor's agent or partner committed the first three required elements and (1) made a representation; (2) which the person knew was false at the time it was made; and (3) which the person made with the intent and purpose to deceive the creditor.

The requirement that a partnership or agency relationship exist to establish vicarious liability under *Bartenwerfer* is similarly applicable to the first two elements of  false pretenses or representations required for a finding of nondischargeability under § 523(a)(2)(A).  To succeed on a false pretenses or representations cause of action under § 523(a)(2)(A) utilizing the principles of *Bartenwerfer*, Plaintiff must show that Debtor's agent or partner committed the first two required elements and (1) made knowing and fraudulent falsehoods (2) describing past or current facts.

Plaintiff's allegation regarding § 523(a)(2)(A) in this case is that Defendant made material misrepresentations and omissions regarding both her financial condition as well as her ability to repay the loans.[26]  Plaintiff also contends her misrepresentations and omissions were made with intent to deceive Plaintiff.[27]  In support, Plaintiff explains how the "Business Bank account ending in 254—which was the exclusive bank account used in

---

[26] Pl. Mot. Sum. J., ECF No. 32 at 14.

[27] *Id.*

16

Debtor's business operations—had either insufficient funds or very low funds to cover payment of the SOT Vehicles to ACE both at the time such Advances were made and when the SOT Vehicles were disposed of by Debtor."[28] Plaintiff also describes how Defendant had insufficient funds to cover loan advances when funds were requested.[29]  Plaintiff argues Defendant knew her bank account had low or insufficient funds when she made received loans, and knew she had insufficient funds in her bank account to cover the check she wrote to Plaintiff.[30]

Defendant disputes these allegations.  She argues there is no evidence she did not intend to repay the loans, that she was not involved in the day to day operations of AutoDallas, and that none of the requests for loans were signed by her personally.[31]  Defendant also claims she has never personally spoken to anyone working for Plaintiff about receiving a loan.[32] Consequently, Defendant believes no representations to Plaintiff ever occurred.[33]

---

[28] *Id.*

[29] *Id.* at 15.

[30] *Id.* at 16.

[31] Def. Obj., ECF No. 34 at 4.

[32] *Id.*

[33] *Id.*

Defendant's argument is incomplete in light of the holding in

*Bartenwerfer*.[34] No longer is personal involvement always a necessary

prerequisite for finding nondischargeability under § 523(a)(2)(A). And yet,

even if Defendant had no personal involvement in the alleged fraud, genuine

issues of fact exist whether she had agents or partners, and if so whether they

acted in the scope of their authority under Texas law to commit false

pretenses, false representations, or actual fraud under § 523(a)(2)(A) as

Plaintiff argues.

**B.    11 U.S.C. § 523(a)(4)**.

11 U.S.C. § 523(a)(4) excepts a debt from discharge if it was incurred

"for fraud or defalcation while acting in a fiduciary capacity, embezzlement,

or larceny." 11 U.S.C. § 523(a)(4). Embezzlement is the "fraudulent

appropriation of property by a person to whom such property has been

entrusted, or into whose hands it has lawfully come." *Miller v. J.D. Abrams*

*Incorporated (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998). Plaintiff can

establish embezzlement for purposes of 523(a)(4) by proving that (1)

Defendant appropriated funds, (2) the appropriation was for the Defendant's

use or benefit, and (3) Defendant appropriated the money with fraudulent

---

[34] "[S]ometimes a debtor is liable for fraud that she did not personally commit—for
example, deceit practiced by a partner or an agent. We must decide whether the bar
extends to this situation too. It does." *Bartenwerfer v. Buckley*, 143 S. Ct. 665, 670 (2023).

intent. *Smith v. Hayden (In re Hayden)*, 248 B.R. 519, 525 (Bankr. N.D. Tex.

2000); *In re Mejorado*, 605 B.R. 116, 123 (Bankr. N.D. Tex. 2019).

Plaintiff accuses Defendant of embezzling car sales proceeds because

embezzlement occurs when "an automobile dealer fails to remit funds from

encumbered inventory motor vehicles sold out of trust."[35]  In support Plaintiff

relies on several cases finding embezzlement to exist because of trust

obligations in auto dealer inventory financing agreements.  *See, e.g., In re*

*Blanton*, 149 B.R. 393, 394-95 (Bankr. E.D. Va. 1992) (sale of consigned

automobiles and misappropriation of proceeds constituted embezzlement); *see*

*also In re Rebhan*, 45 B.R. 609, 614 (Bankr. S.D. Fla. 1985) (sale of vehicles

subject to floor plan agreement with creditor and misappropriation of

proceeds was embezzlement), *aff'd sub nom.*, *Chrysler Credit Corp. v. Rebhan*,

842 F.2d 1257 (11th Cir. 1988); *see also In re Freeman*, 30 B.R. 704, 708

(Bankr. W.D. La. 1983) (sale of vehicles subject to floor plan agreement ruled

to be embezzlement); *see also In re Marinko*, 148 B.R. 846, 850-51 (Bankr.

N.D. Ohio 1992) (sale of floor plan vehicles out of trust constituted

embezzlement).

Defendant responds that Plaintiff has failed to show there is no issue of

fact regarding intent, relying on *In re Staggs*, a case with facts similar to this

---

[35] Pl. Mot. Sum. J., ECF No. 32 at 17-18.

case. *In re Staggs*, 573 B.R. 898 (Bankr. N.D. Ala. 2017).  The debtor in

*Staggs* was sole owner of a car dealership who acted as bookkeeper, but had

little to no participation in the operation of the company.  *Id.* at 915-16.  The

company's general manager, the debtor's husband, was in charge of the floor

plan financing agreement for the acquisition of inventory.  *Id.* at 916.  The

*Staggs* court found that fraudulent intent was not established because, while:

> . . . fraudulent intent may be imputed to an "innocent" spouse
> where that spouse knows of the other spouse's misconduct and
> participates in the wrongful use or enjoyment of the property of
> another, [creditor] failed to establish by a preponderance of the
> evidence that [debtor] knew that her husband was providing her
> with an incomplete list of cars to pay off.  Further, [creditor]
> failed to establish that [debtor] appropriated the sales proceeds
> for her own personal use or otherwise participated in the
> wrongful use or enjoyment of the proceeds of Westlake Flooring's
> collateral.

*Id.*  Plaintiff argues *Staggs* is inapplicable because the *Staggs* debtor was

owner of an LLC and had additional protections not present here.[36]

Defendant, on the other hand, was not operating an LLC and allegedly

embezzled funds from a personal bank account.[37]  However, *Staggs* itself

makes no reference to LLC protections when discussing 523(a)(4).  *See*

*generally Staggs* at 919-20.

Plaintiff also points to precedent stating that "[i]t is the character of the

---

[36] Pl. Reply, ECF No. 35 at 6.

[37] *Id.*

debt rather than the character of the debtor that determines whether the debt is nondischargeable under § 523(a)(4)." *Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 351 (5th Cir. 2017); *see also Boyington Capital Grp., LLC v. Haler (In re Haler)*, Nos. 10-42052, 10-4217, 2018 Bankr. LEXIS 3251, at *27 (Bankr. E.D. Tex. 2018). In *Cowin*, the Fifth Circuit affirmed a bankruptcy court's finding that a debtor "and his co-conspirators committed illegal acts constituting 'larceny' within the meaning of § 523(a)(4)." *Id.* In reaching this conclusion the Fifth Circuit discussed precedent regarding § 523(a)(2)(A) it found "instructive." *Id., citing Deodati v. M.M. Winkler & Assocs. (In re M.M. Winkler & Assocs.)*, 239 F.3d 746 (5th Cir. 2001). The holding in *Winkler* was that "if a debt arises from fraud and the debtor is liable for that debt under state partnership law, the debt is nondischargeable under § 523(a)(2)(A)." *Winkler*, 239 F.3d at 751 (5th Cir. 2001). The Fifth Circuit, regarding this holding, stated that "[t]he same reasoning is relevant to determining the scope of § 523(a)(4)." *Cowin*, 864 F.3d at 351. This means that there are "no further criteria or qualifications" beyond the elemental requirements for finding embezzlement or larceny under § 523(a)(4)." *Id. Cowin* was decided before *Bartenwerfer*, but their combined reasoning indicates that under § 523(a)(4) a debtor may be held liable for the embezzlement or larceny of a conspirator, partner, or agent as

21

determined under state law.  Any cause of action alleging embezzlement or larceny under § 523(a)(4) would fail if no required conspiracy, partnership, or agency under state law exists, or if evidence is insufficient of the actions of Defendant's conspirator, agent, or partner.

The summary judgment evidence submitted, read in the light most favorable to Defendant, is insufficient for a finding of embezzlement under § 523(a)(4).  It is also insufficient to find that Defendant had a conspirator, partner, or agent under state law who committed embezzlement under § 523(a)(4).  The Court finds genuine issues of fact remain in this case regarding Plaintiff's embezzlement cause of action.

## VI.  Conclusion

Based upon the Court's consideration of the pleadings, the summary judgment evidence submitted therewith, the relevant legal authorities, and for the reasons set forth herein, the Court concludes that the "Motion for Summary Judgment" filed by Plaintiff is hereby **DENIED**.  Plaintiff failed to demonstrate that they were entitled to a judgment as a matter of law regarding the nondischargeability issues raised under 11 U.S.C. § 523(a)(2)(A) and § 523(a)(4).  An appropriate order consistent with this opinion shall be entered by the Court.

Signed on 04/23/2024

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE